UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT)
Civil Division

| | |
|---|---|
| Jenna Marie Calton<br>1904 Curry Road<br>Lutz, FL 33549<br><br>Renee Lynn DeBoard-Lucas<br>6288 Old Washington Road<br>Elkridge, MD 21075<br><br>Alison Marie Kramer-Kuhn<br>46 Fenceline Drive<br>Gaithersburg, MD 20878<br><br>Emily Farrell Picon<br>5230 Tuckerman Lane, Apt. 820<br>North Bethesda, MD 20852<br><br>*and*<br><br>Stephanie Wolf<br>8206 Kenfield Court<br>Bethesda, MD 20817<br><br>v.<br><br>Montgomery County<br>*Serve* Marc Elrich,<br>Montgomery County Executive<br>101 Monroe Street, Second Floor<br>Rockville, Maryland 20850<br><br>Tree House Child Advocacy Center<br>7300 Calhoun Place, Suite 700<br>Rockville, MD 20855<br><br>Thomas A. Grazio<br>c/o Montgomery County Child Welfare<br>Services Program<br>1301 Picard Drive<br>Rockville, MD 20850<br><br>Loretta St. John | **JURY TRIAL DEMANDED**<br><br><br><br><br><br>CASE NO.: 8:21-cv-01171 |

1

7300 Calhoun Place, Suite 700
Rockville, MD 20855

and

Charles Regan
c/o Derwood Partners
15533 Grinnell Ter
Derwood, MD 20855

# COMPLAINT

Plaintiffs file this Complaint for various tort claims and violation of federal, state and local statutes and are seeking compensatory and punitive damages and equitable relief from the Tree House Child Advocacy Center, Inc., Montgomery County, Thomas A. Grazio, Loretta St. John and Charles Regan.

## NATURE OF THE CASE

1. This action arises from Defendants' illegal firing of five licensed mental health providers serving child victims of abuse and neglect after Plaintiffs made protected, good-faith reports of fraud and malfeasance at the Tree House Child Advocacy Center ("Tree House"). The Tree House nominally operates as a private-public partnership with the Montgomery County Department of Health and Human Services, but in all practical respects, it functions as a branch of Montgomery County Government itself, and at all relevant times Montgomery County co-employed Plaintiffs with the Tree House. Defendants carried out the textbook whistleblower retaliation with bold transparency and with shocking disregard for the welfare of Plaintiffs' vulnerable patients. In addition to their whistleblower retaliation claims, Plaintiffs seek redress for the Defendants' violation of Title VII of the Civil Rights Act of 1964, common law tort claims for reputational harm, wrongful termination, and intentional

2

interference with business relationships. Dr. Stephanie Wolf also asserts claims for slander and libel.

## PARTIES

**Plaintiffs**

2. Jenna Calton, PhD, is a licensed psychologist in Maryland, Virginia, and Florida. She was employed by the Tree House as postdoctoral fellow in 2017 and continued to work for Tree House as a Licensed Psychologist after her fellowship.  She remained in this role until she was illegally terminated on September 23, 2020.

3. Renee Lynn DeBoard-Lucas, PhD, is a licensed psychologist in Maryland.  She started working for Tree House as a Staff Psychologist in or around December of 2019. She remained in this role until she was illegally terminated on September 23, 2020.

4. Alison Marie Kramer-Kuhn, PhD, is licensed psychologist in Maryland.  She started working for Tree House as a Licensed Psychologist in July 2016.   She remained in this role until she was constructively discharged from her position on or about September 18, 2020.

5. Emily Farrell Picon, LCSW-C, is a licensed clinical social worker in Maryland.  She started working as a Mental Health Therapist for Tree House in June of 2018.  She remained in this role until she was illegally terminated on September 23, 2020.

6. Stephanie Wolf, JD, PhD, is a licensed psychologist in Maryland, Virginia, and the District of Columbia.  She started as a fellow at Tree House in April of 2014.  She was hired as a psychologist in 2015 and became the Mental Health Director in January 2016.  She transitioned to the role of Psychologist in July 2020 to work on a part-time basis and continued in that role until she was illegally terminated on August 23, 2020.

7. All Plaintiffs timely filed charges of discriminatory retaliation against the Defendants with the Equal Employment Opportunity Commission and all Plaintiffs received notice of right to sue letters.

**Defendants**

8. Montgomery County, Maryland, is a charter county created pursuant to Local Government Article 25A and, therefore, is included in the meaning of "local government" as defined in Courts and Judicial Proceedings Article Section 5-401(d)(1) of the Annotated Code of Maryland. Montgomery County was responsible for the oversight and management of Tree House through its employee Tom Grazio.

9. The Tree House Child Advocacy Center of Montgomery County, Inc. is a Maryland corporation that at all times relevant to this action was run and overseen by an Executive Director who was a Montgomery County Employee, received the majority of its funding from Montgomery County, was operated from a building where other Montgomery County services were provided to residents and received other in-kind services from Montgomery County.

10. Tom Grazio is a Montgomery County employee who at all times relevant to this action acted as Executive Director of Tree House while a supervisory level employee of Montgomery County.

11. Loretta St. John worked as an administrator at the Tree House staring in or around 2013 and was the Tree House's Director of Operations starting in October of 2017.

12. Charles Regan was a founding member of the Tree House Board of Directors and is currently its president.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(3) and (4) (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction) because the matters in controversy arise under the laws of the Constitution of the United States, including Title VII, which is a law providing for the protection of civil rights.

14. This Court has supplemental jurisdiction over Defendants with respect to Plaintiffs' state law and county code claims pursuant to 28 U.S.C. § 1367 because those claims arise from a common nucleus of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

15. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

16. Venue is proper in the United States District Court for the District of Maryland under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS

17. Tree House provides free mental health services, medical assessments and victim advocacy for children who are suspected to have been physically or sexually abused. It is the only accredited Child Advocacy Center in Montgomery County. As such, its clients are extremely vulnerable children and their families.

18. Tree House offers its clients multi-disciplinary services including medical and forensic examinations and psychological services.

19. Therapy is provided by the Mental Health department, which is headed by a Mental Health Director.  Dr. Wolf was the Mental Health Director from January 2016 until July 2020.  Plaintiffs were all members of the Mental Health department.

20. During their tenure at Tree House, the Plaintiffs noticed and reported various concerns they had with the operations of the organization and the treatment of clients to Tree House management, including Defendant Grazio and Defendant St. John.   These reports were almost always met with derision and acts of retaliation, like being given the silent treatment, changing job duties, and denial of request for resources.

21. In 2020, not only did these concerns continue, but new concerns continued to arise, particularly in April/May regarding how Tree House was handling the Covid Pandemic and in late May or early June with its hiring of a new Mental Health Director.

22. Dr. Wolf had been acting as the Mental Health Director starting in January 2016 and held the position on a part-time basis. In May of 2020, Defendants Grazio and St. John told Dr. Wolf that the position was going to be full-time and asked if she would stay in that capacity.  Dr. Wolf declined to take the position but agreed to remain part-time as a psychologist.  She officially transitioned to that role of psychologist in July 2020.

23. Dr. Kramer-Kuhn applied for the full-time Mental Health Director position on May 31, 2020. The following day Defendants Grazio and St. John informed Dr. Kramer-Kuhn that her position would be eliminated.

24. On or about July 2020 there was a change in leadership at the Tree House Board of Directors.  Defendant Regan became the President.

25. Plaintiffs were hopeful about this change and believed that Defendant Regan would be receptive to their concerns.

26. In or around the end of April 2020, Dr. Kramer-Kuhn informally spoke with William Schlossenberg, a development consultant who attended board meetings whom she considered an ally, about some of these concerns. Schlossenberg told her that the Board planned to evaluate Defendants Grazio and St. John's performance in two months. Dr. Kramer-Kuhn asked him to include the staff in the process.

27. Plaintiffs were not included in this process.

28. Plaintiffs decide to report their concerns directly to the Board.

29. On June 9, 2020, Plaintiffs sent a letter detailing their concerns to Defendant Regan copying another board member, Dr. Samantha Bender.

30. The letter reported the following misconduct:

   a. Material Misrepresentations in Annual Reports:

      i. The Tree House Annual Reports for 2017, 2018 and 2019 misreported the number of clients served. When Plaintiffs informed Defendant St. John of this error in 2017, she corrected the error, but she did not correct it for the other years.

      ii. Because potential donors rely on the Annual Reports, Plaintiffs reasonably believed that this misreporting was a criminal violation of the Maryland Solicitations Act.

   b. Providing False or Misleading Information to Montgomery County Council, accreditation agencies and funders and misuse of grant funds.

    i. During a Health and Human Services work session on September 23, 2019, Defendant Grazio misrepresented the mental health providers' caseloads and ability to address vicarious trauma. He also misled the Council about how the Tree House provided services to non-English speaking children.

    ii. In 2019, when Defendant Grazio learned that Tree House did not meet the National Children's Alliance Accreditation standards, he told employees that they would "just lie" about standards they could not meet just as he had done for the first accreditation that he had overseen.  Similarly, when staff informed Defendant St. John that they had over-reported the number of clients provided services in a grant, she did not correct it because she did not believe it would be noticed.

    iii. Defendants Grazio and St. John provided misleading job descriptions in grant applications and reports to circumvent staffing requirements or avoid reporting that funded positions functioned outside the scope of work. Similarly, Defendant St. John altered staff timesheets to make it look like staff was spending more time on grant projects and asked staff members to sign them.

c. Failure to meet licensure requirements:  Defendant Grazio failed to ensure that therapists with LMSW licenses received the supervision required by Maryland Heath Occupations Title §19-307.

d. Failure to protect personal health information (PHI):

    i. Defendant Grazio provided his login information to CHESSIE, a child welfare database system to employees.  This allowed unauthorized access to PHI

      about children.  Defendants Grazio and St. John also instructed a Tree House staff member to do CPS background checks of staff and volunteers using Grazio's login information, risking exposure of PHI and other sensitive and personal information to unauthorized parties.  Defendants claimed that they could not afford to do the background checks properly, even though the checks were actually free.

  ii.  Tree House did not have proper systems to label store and track clients' files containing PHI.  Paper files and DVDs of forensic interviews were kept haphazardly and could easily be accessed by unauthorized parties.

e.  Creating a hostile work environment because of gender:

  i.  Defendant Grazio created a hostile working environment for the Tree House's one openly LGBTQ employee, including playing a "prank" where he posted photos of the employee throughout the building and led the employee to believe there were more photos in Law Enforcement and Child Welfare Offices. Defendant Grazio also targeted this employee for public criticism in staff meetings, making unwarranted remarks about her work ethic and eating habits.

  ii.  Plaintiffs reasonably believed that Defendant Grazio took these actions because of the employee's non-gender conforming sexual identity.

  iii.  Defendant Grazio frequently referred to women as "bitches," told off-color and gender-biased jokes, and talked to them about notorious celebrity sexual assault allegations at inappropriate times, belittling female staff members' safety concerns and telling staff members that "silence equals consent."  In a

        workplace that focused on helping victims of sexual abuse, this language was particularly inappropriate and created a hostile working environment for female employees.

    iv. Plaintiffs reasonably believed that this behavior violated the Maryland Civil Rights Act.

31. Plaintiffs attached several emails and other documents to the letter as evidence of their concerns.

32. Plaintiffs signed the letter as "the Mental Health Department." Plaintiffs specifically noted that they are afraid of retaliation and have asked Dr. Kramer-Kuhn to be their representative because her position was going to be eliminated. Dr. Kramer-Kuhn emailed the letter to Defendant Regan and to Dr. Bender.

33. In response, Defendant Regan said that he and Bender would discuss the letter in confidence. Dr. Bender thanked Dr. Kramer-Kuhn, and apologized that things have been difficult for so long. Defendant Regan also asked who else had seen the letter.

34. Dr. Kramer-Kuhn acknowledged that some other members of the Mental Health department had seen the documents.

35. Defendant Regan asked to set up a meeting on June 17 or 18. Dr. Kramer-Kuhn pushed for an earlier date because of the seriousness of their concerns.

36. While scheduling the meeting, Defendant Regan reminded Dr. Kramer-Kuhn of the control that Montgomery County exercises over the Tree House and urged caution because of the risk that the County could shut down the Tree House. In this conversation, Defendant Regan referred to Defendant St. John as a Montgomery County employee, when in fact St. John was

the highest-ranking Tree House employee and the Board was responsible for her employment.

37. Plaintiffs Kramer-Kuhn, Picon and Wolf ultimately met with Defendant Regan and Dr. Bender on June 12, 2020.

38. During the meeting, Defendant Regan and Dr. Bender asked for additional documentation. Dr. Kramer-Kuhn forwarded the requested documents and continued to keep them informed about the hiring process for the Mental Health Director. In particular, she expressed Plaintiffs' concerns that no one from the Mental Health Department was included in the hiring process even though the Tree House's forensic interviewer and the Pediatrician participated in the interviews .

39. After additional discussions, Dr. Kramer-Kuhn told Defendant Regan that he can use the letter and refer to her and Dr. Wolf by name as the authors if necessary.

40. On June 23, 2020 Defendant Regan informed Plaintiffs that he and other board members met with Lisa Merkin and other Montgomery County officials about Plaintiffs' concerns. According to Defendant Regan, Merkin was troubled that Plaintiffs had not approached her directly.  Regan explained that the Plaintiffs feared retaliation from Defendant Grazio.

41. Defendant Regan also told Plaintiffs that Defendants Grazio and St. John warned him that "disgruntled" staff from the Mental Health department might contact him.  According to Defendant Regan, he did not reveal his earlier communications with Plaintiffs during this conversation.

42. Plaintiff Kramer-Kuhn continued to keep the board informed about the ongoing issues at the Tree House.

43. Upon information and belief, at some point during this process Defendants Grazio and St. John learned about Plaintiffs' letter.

44. In or around late June 2020, the Tree House hired Molly Cupid as the Mental Health Director. Ms. Cupid came directly from years as a child welfare worker. She was unqualified to oversee the mental health services that Tree House provided to its clients due to her limited clinical experience and lack of certification in TFCBT, one of the requirements of the job posting that Defendants created. Plaintiffs further believed Defendant Grazio and St. John selected Cupid because she would not recognize or report their malfeasance.

45. On June 25, 2020, Defendant St. John informed Dr. Kramer-Kuhn that she was not selected as Mental Health Director because she was not a "good fit" for the position and informed her that Cupid would be taking the job. Although the Board had decided that Dr. Kramer-Kuhn could remain at Tree House as a therapist and grant writer, Defendant St. John allowed her to believe that that her job was ending because she had not been selected as the Mental Health Director.

46. Several days later, on the afternoon of her last scheduled workday, Defendant St. John finally informed Dr. Kramer-Kuhn that she could stay at Tree House for three more months.

47. Once Cupid started work, Dr. Wolf was expected to provide the majority of her training and orientation. She did so, and provided detailed documentation of its completion to Regan, St. John, and Grazio.

48. Upon information and belief, by mid-July, Defendants had told Cupid that they intended to fire Dr. Wolf.

49. On July 20, 2020, Dr. Kramer-Kuhn sent an email to Cupid asking her to meet with the Mental Health department, in part to discuss the number of clients they were expected to see.

50. The following day, Defendant St. John sent Dr. Kramer-Kuhn a disciplinary report. The report admonished her for questioning the number of clients therapists were expected to see and for speaking with other members of the Mental Health Team without permission.

51. The disciplinary report indicated that Dr. Kramer-Kuhn would be fired if she did not agree to its terms. Under this duress, Dr. Kramer-Kuhn signed and returned the report.

52. The next day, Kristi Johnson-Ford, a program manager from the Montgomery County Department of Health and Human Services' Human Resources and Labor Team emailed the Tree House Staff informing them that her department was investigating an anonymous complaint and giving staff interview dates.

53. On August 20, 2020, Plaintiffs sent a follow-up to the investigative team, outlining their concerns about Cupid's qualifications and actions as Mental Health Director.

54. Four days later, during a Webex meeting on August 24, 2020, Defendants Regan and St. John and Ms. Cupid informed Dr. Wolf that she was being fired for cause. Upon information and belief, this decision was made with the approval of Defendants Grazio and Montgomery County.

55. Immediately thereafter, Defendants Grazio and St. John held an online meeting with the entire Tree House staff. During that meeting, with Defendant Grazio's knowledge and consent, Defendant St. John announced that Dr. Wolf had been fired for cause.

56. By the actions described above, Defendants have made the terms and conditions of Dr. Kramer-Kuhn's employment intolerable. In particular, the pretextual and unwarranted disciplinary action against her and the generally hostile treatment from Defendants and Cupid had made it impossible for Dr. Kramer-Kuhn to do her job within the ethical bounds of her profession. She was also afraid she would be fired, and that Defendants will attempt to

     damage her professional reputation as they have done with Dr. Wolf.  Dr. Kramer-Kuhn believed she had no choice but to tender her resignation.

57. Three days later, Cupid announced to the Mental Health Team that the Montgomery County Investigation is over and that the team could "set up a meeting to process the experience."

58. Dissatisfied with this response, Plaintiffs determined that outside bodies and regulators should be informed of their concerns.  On September 17, 2020 Plaintiffs forwarded copies of their June 9 letter to the Internal Revenue Service, the U.S, Equal Employment Opportunity Commission, the National Children's Alliance, Maryland Attorney General, Maryland Board of Social Work Examiners, several Montgomery County offices and all member of the Montgomery County Council.

59. Dr. Kramer-Kuhn sent her letter of resignation to Defendant St. John on September 18, 2020.

60. On September 23, 2020, Defendants convened a virtual meeting and videoconference to fire Dr. Calton, Dr. DeBoard-Lucas and LCSW-C Picon together, as a group.

61. Defendants told three therapists they were fired because "their services were no longer needed," despite the fact that Dr. Calton, Dr. DeBoard-Lucas and LCSW-C Picon were each actively treating a full caseload of clients.

62.  The Tree House was running a waiting list for patients needing their services and did not have anyone who could provide the same treatments as Dr. Calton, Dr. DeBoard-Lucas and LCSW-C Picon or who could supervise the psychology trainees.

63. Defendants' stated reason for terminating their employment was plainly false and a pretext for retaliation.  Indeed, the Tree House could not meet the mental health needs of its clients and the many clients were abruptly left without desperately needed therapy and treatment.

64. Even after being fired, Plaintiffs pleaded to Defendants to facilitate their continued treatment of their patients, which they offered to do *pro bono* until other arrangements could be made. Defendants rejected this offer, prioritizing their desire to punish Plaintiffs over the needs of the patients.

65. On information and belief, Defendants have told government agencies and other potential sources of clients for Plaintiffs that Plaintiffs were fired for cause or have otherwise made false and misleading statements to third parties about Plaintiffs' tenure at the Tree House or their professional qualifications.

66. Upon information and belief, Defendants' purpose in spreading this misinformation was to retaliate against Plaintiffs for disclosing serious misconduct by the Tree House management.

67. Plaintiffs have lost income because of the spread of this misinformation.

68. In addition to loss of income, Plaintiffs have suffered serious emotional distress from Defendants' misconduct.

**Enumerated Counts By All Plaintiffs Unless Noted Otherwise**

**COUNT I**
**Maryland Health Care Workers Whistleblower Protection Act**
**Against All Defendants Except Mr. Regan**

69. Plaintiffs incorporate by reference all of the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

70. Plaintiffs are licensed health care workers.

71. Plaintiffs reported, in writing, violations of regulations and other conduct that they reasonably believed posed a specific and substantial danger to the health and safety of their clients, to the Tree House board of directors, and internal management.

72. After management and the Board failed to rectify these problems in a reasonable time, Plaintiffs made further disclosures to outside regulatory bodies.

73. Defendants terminated Plaintiffs' employment in retaliation for threatening to make further disclosures.  Plaintiff Kramer-Kuhn's resignation was a constructive termination.

## COUNT II
## Common Law Wrongful Termination in Violation of Public Policy
## Against All Defendants Except Mr. Regan

74. Plaintiffs incorporate by reference all of the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

75. Plaintiffs disclosed serious malfeasance on the part of Tree House management, including fraudulent information in materials used by potential donors in choosing whether to donate to the Tree House.

76. Plaintiffs reasonably believed that this misreporting was a criminal violation of the Maryland Solicitations Act.

77. Plaintiffs were terminated from their positions with Tree House shortly after making these disclosures. Plaintiff Kramer-Kuhn's resignation was a constructive termination.

78. Defendants knew about Plaintiffs' disclosures and participated in deciding to terminate Plaintiffs' employment.

79. Plaintiffs' termination violated the clear public policy mandate of protecting charitable donors from fraud.

## COUNT III
## Common Law Tortious Interference With Business Relationships
## Against All Defendants

80. Plaintiffs incorporate by reference all of the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

81. Defendants improperly terminated Plaintiffs' employment with Tree House. Plaintiff Kramer-Kuhn's resignation was a constructive termination

82. In doing so, Defendants intentionally gave the impression that these terminations were "for cause" or otherwise warranted by malfeasance or improper conduct by Plaintiffs.

83. On information and belief, Defendants provided information to government agencies and other potential sources of clients that Defendant knew would result in Plaintiffs not receiving referrals or other work from these sources.

84. Upon information and belief, Defendants' purpose in spreading this misinformation was to retaliate against Plaintiffs for disclosing serious misconduct by the Tree House management.

85. Plaintiffs have lost income because of the spread of this misinformation.

## COUNT IV
### Common Law Defamation (Libel, Slander, and False Light)
### By Dr. Stephanie Wolf Against All Defendants

86. Plaintiffs incorporate by reference all of the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

87. Defendant Regan knew that Plaintiffs were terminated from their positions at Tree House without cause.

88. On information and belief, Defendant Regan has told third parties that Plaintiffs were fired for cause and has made other false statements about their professional integrity.

89. Upon information and belief, Defendant Regan's purpose in spreading this misinformation was to retaliate against Plaintiffs for disclosing serious misconduct by the Tree House management and cause them harm.

90. Plaintiffs have suffered actual harm because of Defendant Regan's false statements.

## COUNT V
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, Maryland State Government Article 20-602 and Montgomery County Code Chapter 27
### Against the Tree House, Montgomery County and Defendant Grazio

91. Plaintiffs incorporate by reference all of the allegations contained in the proceeding paragraphs of the Complaint as if set forth fully herein.

92. Plaintiffs complained that Defendant Grazio created a hostile working environment for the Tree House's one openly LGBTQ employee, including playing a "prank" where he posted photos of the employee throughout the building and led the employee to believe there were more photos in Law Enforcement and Child Welfare Offices. Defendant Grazio also targeted this employee for public criticism in staff meetings, making unwarranted remarks about her work ethic and eating habits.

93. Plaintiffs reasonably believed that Defendant Grazio took these actions because of the employee's non-gender conforming sexual identity.

94. Plaintiffs were terminated from their positions with Tree House shortly after making these disclosures. Plaintiff Kramer-Kuhn's resignation was a constructive termination.

   **WHEREFORE**, Plaintiffs request that this Court:

   1) Award unspecified compensatory, punitive, and nominal damages against Defendants;

   2) Award equitable relief in the form of front and back pay;

   3) Award declaratory relief;

   4) Award attorney's fees and court costs incurred in pursuing this matter; and

   5) Award any further relief that the nature of this case may require.

### JURY DEMAND

Plaintiffs demand a trial by jury on those claims so triable.

Dated: May 13, 2021

*/s/ Darrell Chambers*
Darrell Chambers [27256]
Douglas Rosenbloom [21548]
**CHAMBERS & ROSENBLOOM LLP**
8403 Colesville Road, Suite 1100
Silver Spring, MD 20910
(202) 638-2831
darrell@chambersrosenbloom.com
doug@chambersrosenbloom.com

*Counsel for Plaintiff*